Skip to Main Content  Logout  My Account  Search Menu  New Civil Search  Refine Search  Back                                    Location : All Courts   Help

# REGISTER OF ACTIONS
## CASE NO. 20-03-03871

| | | | |
|---|---|---|---|
| Cheryl Tomlinson, Brian Tomlinson VS. Rodney Thomas, Metropolitan Lloyds Insurance Company of Texas | §<br>§<br>§<br>§<br>§ | Case Type:<br><br>Date Filed:<br>Location: | **Contract**<br>**Consumer/Comm/Debt**<br>**>$100,000 but <$200,000**<br>**03/18/2020**<br>**County Court at Law #2** |

---

### PARTY INFORMATION

| | | |
|---|---|---|
| **Defendant** | **Metropolitan Lloyds Insurance Company of Texas**<br>Registered Agent CT Corporation System<br>1999 Bryan St Ste 900<br>Dallas, TX 75201-3136 | **Attorneys**<br>**T. Glenn Ingram**<br>*Retained*<br>214-748-5000(W) |
| **Defendant** | **Thomas, Rodney**<br>6107 Hubbell Dr<br>Pearland, TX 77584-1551 | |
| **Plaintiff** | **Tomlinson, Brian** | **Chad T. Wilson**<br>*Retained*<br>832-415-1432(W) |
| **Plaintiff** | **Tomlinson, Cheryl**<br>455 E Medical Center Blvd, Ste 555<br>Webster, TX 77598 | **Chad T. Wilson**<br>*Retained*<br>832-415-1432(W) |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | | | |
|---|---|---|---|
| 03/18/2020 | **Original Petition (OCA)** | | |
| 03/18/2020 | **E-Filed Original Petition Document** | | |
| 03/18/2020 | **Request For Service** | | |
| 03/18/2020 | **Request For Service** | | |
| 03/18/2020 | **Jury Trial Requested** | | |
| 03/18/2020 | **Jury Fee Paid** | | |
| 03/24/2020 | **Citation** | | |
| | Thomas, Rodney | Served<br>Returned | 04/27/2020<br>04/29/2020 |
| 03/24/2020 | **Citation** | | |
| | Metropolitan Lloyds Insurance Company of Texas | Served<br>Returned | 04/28/2020<br>04/29/2020 |
| 04/29/2020 | **Return of Service** | | |
| 04/29/2020 | **Return of Service** | | |
| 05/13/2020 | **Original Answer** | | |
| 05/13/2020 | **Jury Fee Paid** | | |
| 05/13/2020 | **Jury Trial Requested** | | |

---

### FINANCIAL INFORMATION

| | | | |
|---|---|---|---|
| | **Plaintiff** Tomlinson, Cheryl | | |
| | Total Financial Assessment | | 348.00 |
| | Total Payments and Credits | | 348.00 |
| | **Balance Due as of 05/26/2020** | | **0.00** |
| 03/19/2020 | Transaction Assessment | | 348.00 |
| 03/19/2020 | E-File Electronic Payment  Receipt # 2020-265078 | Tomlinson, Cheryl | (348.00) |

EXHIBIT A

Received and E-Filed for Record
3/18/2020 12:22 PM
Melisa Miller, District Clerk
Montgomery County, Texas
Deputy Clerk, Beth Rogers

CAUSE NO. 20-03-03871 _____

| | | |
|---|---|---|
| BRIAN AND CHERYL TOMLINSON, | § | IN THE JUDICIAL COURT OF |
| | § | |
| *Plaintiffs,* | § | |
| | § | **Montgomery County - DC - County Court at Law #2** |
| V. | § | |
| | § | MONTGOMERY COUNTY, TEXAS |
| METROPOLITAN LLOYDS INSURANCE | § | |
| COMPANY OF TEXAS AND RODNEY A. | § | |
| THOMAS, | § | |
| | § | |
| *Defendants.* | § | _____ DISTRICT COURT |

---

**PLAINTIFFS' ORIGINAL PETITION, JURY DEMAND,
AND REQUEST FOR DISCLOSURE**

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Brian and Cheryl Tomlinson, ("Plaintiffs"), and file **Plaintiffs' Original Petition, Jury Demand, and Request for Disclosure**, complaining of Metropolitan Lloyds Insurance Company of Texas ("Metropolitan") and Rodney Thomas ("Thomas") (or collectively "Defendants") and for cause of action, Plaintiffs respectfully show the following:

**DISCOVERY CONTROL PLAN**

1. Plaintiffs intend to conduct discovery under Level 3, Texas Rules of Civil Procedure 190.4 and 169.

**PARTIES**

2. Plaintiffs, Brian and Cheryl Tomlinson, reside in Montgomery County, Texas.

3. Defendant, Metropolitan Lloyds Insurance Company of Texas, is a Texas insurance company engaged in the business of insurance in the State of Texas. Plaintiffs request service of citation upon Metropolitan Lloyds Insurance Company of Texas through its registered agent for service: **CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.** Plaintiffs request service at this time.

4.    Defendant Rodney Thomas is an individual resident of Irving, Texas.  Thomas may be served with citation at the address listed with the Texas Department of Insurance**: 6107 Hubbell Drive, Pearland, Texas 77584-1551.** Plaintiffs request service at this time.

## JURISDICTION

5.    The Court has jurisdiction over Metropolitan because this Defendant engages in the business of insurance in the State of Texas, and the causes of action arise out of Metropolitan's business activities in the state, including those in Montgomery County, Texas, with reference to this specific case.

6.    The Court has jurisdiction over Thomas because this Defendant engages in the business of adjusting insurance claims in the State of Texas, and the causes of action arise out of this Defendant's business activities in the State of Texas, including those in Montgomery County, Texas, with reference to this specific case.

## VENUE

7.    Venue is proper in Montgomery County, Texas because the insured property is located in Montgomery County, Texas, and all or a substantial part of the events giving rise to this lawsuit occurred in Montgomery County, Texas.  TEX. CIV. PRAC. & REM. CODE § 15.032.

## FACTS

8.    Plaintiffs assert claims for fraud, breach of contract, violations of sections 541 and 542 of the Texas Insurance Code, and violations of the Texas DTPA.

9.    Plaintiffs own a Metropolitan Lloyds Insurance Company of Texas homeowner's insurance policy, number H 895362901 0 ("the Policy").  At all relevant times, Plaintiffs owned the insured premises located at 4010 Briar Lane, Magnolia, Texas 77354 ("the Property").

2

10.     Metropolitan or its agent sold the Policy, insuring the Property, to Plaintiffs.  Metropolitan or its agent represented to Plaintiffs that the Policy included wind and hailstorm coverage for damage to Plaintiffs' property.  Metropolitan has refused the full extent of that coverage currently owed to Plaintiffs.

11.     On or about February 1, 2018, the Property sustained extensive damage resulting from a severe storm that passed through the Magnolia, Texas area.

12.     In the aftermath of the wind and hailstorm, Plaintiffs submitted a claim to Metropolitan against the Policy for damage to the Property.   Metropolitan assigned claim number JDH38871 6P to Plaintiffs' claim.

13.     Plaintiffs asked Metropolitan to cover the cost of damage to the Property pursuant to the Policy.

14.     Damaged areas of the property include, but not limited to, the roof, vents, flashings, gutters and downspouts.

15.     Metropolitan assigned or hired Rodney Thomas ("Thomas") to adjust the claim.

    a.  Thomas had a vested interest in undervaluing the claims assigned to him by Metropolitan in order to maintain his employment. The disparity in the number of damaged items due to the storm in his report compared to that of Plaintiffs' Third-Party Adjuster's is evidence of fraud on the part of Thomas. The valuation of damages that were included in Thomas's report compared to Plaintiffs' Third-Party Adjuster's is also evidence of fraud on the part of Thomas.

    b.  Furthermore, Thomas was aware of Plaintiffs' deductible before visiting the Property to conduct the inspection. Thomas had advanced knowledge of what amount of damages he needed to find in order to either deny the claim or find the

3

claim below the deductible.

c.  Thomas made misrepresentations as to the amount of damage Plaintiffs' Property sustained as well as misrepresentations regarding how much it would cost to repair the damage to Plaintiffs' Property.

d.  Thomas made further misrepresentations to Plaintiffs during his inspection. Thomas used his expertise to fabricate plausible explanations for why visible damage to Plaintiffs' Property would not be covered under the policy. Such misrepresentations include damage to the Property owing from wear and tear, damage from a previous claim, and damage of a type not consistent with the type of claim that was made.

16.  Metropolitan, through its agents, namely Thomas, conducted a substandard and improper inspection and adjustment of the Property, which yielded grossly inaccurate and unrealistic assessments of the cause, extent, and dollar amount of damage to the Property.

17.  The initial adjustment of the claim occurred on or around February 27, 2018, Thomas found that there was very minimal  damage from a covered peril to the roof of the property.

18.  After application of the policy deductible, Plaintiffs were left without adequate recovery to complete proper repairs on Plaintiffs' property.

19.  To date, Plaintiffs have received $0.00 for damage to Plaintiffs' Property. The damage to Plaintiffs' Property is currently estimated at $26,247.44.

20.  Since due demand was made on January 16, 2020, Metropolitan has not communicated that any future settlements or payments would be forthcoming to pay for the entire loss covered under the Policy, nor did it provide any explanation for failing to settle Plaintiffs' claim properly.

21.     As stated above, Defendants failed to assess the claim thoroughly.  Based upon Defendants'
grossly unreasonable, intentional, and reckless failure to investigate and adjust the claim
properly, Metropolitan failed to provide full coverage due under the Policy.

22.     As a result of Metropolitan's failure to provide full coverage, along with Metropolitan's
delay tactics to avoid reasonable payment to Plaintiffs, Plaintiffs have suffered damages.

23.     Metropolitan failed to perform its contractual duties to Plaintiffs under the terms of the
Policy.  Specifically, Metropolitan refused to pay the full proceeds of the Policy, although
due demand was made for an amount sufficient to cover repairs to the damaged Property,
and all conditions precedent to recover upon the Policy were accomplished by Plaintiffs.

24.     Defendants' misrepresentations, unreasonable delays, and continued denials constitute a
breach of the statutory obligations under Chapters 541 and 542 of the Texas Insurance
Code.  Thus, the breach of the statutory duties constitutes the foundation of a breach of the
insurance contract between Metropolitan and Plaintiffs.

25.     Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement
Practices.  TEX. INS. CODE §541.060(a)(1).  Defendants have not attempted to settle
Plaintiffs' claim in a fair manner, even though Defendants were aware of their liability to
Plaintiffs under the Policy.  Specifically, Defendants have failed to timely pay Plaintiffs'
coverage due under the Policy.

26.     Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement
Practices.  TEX. INS. CODE §541.060(a)(2)(A).  Defendants failed to provide Plaintiffs a
reasonable explanation for not making the full payment under the terms of the Policy.

27.     Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement

Practices.  TEX. INS. CODE §541.060(a)(4).  Defendants refused to provide full coverage due to Plaintiffs under the terms of the Policy.  Specifically, Metropolitan, through its agents, servants, and representatives, namely Thomas, performed an outcome-oriented investigation of Plaintiffs' claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiffs' losses on the Property.

28.   Defendants' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims.  TEX. INS. CODE §542.055.  Defendants failed to reasonably accept or deny Plaintiffs' full claim within the statutorily mandated time after receiving all necessary information.

29.   Defendants' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims.  TEX. INS. CODE §542.056.  Defendants failed to meet their obligations under the Texas Insurance Code regarding timely payment of the claim.  Specifically, Defendants have delayed payment of Plaintiffs' claim longer than allowed, and Plaintiffs have not received full payment for the claim.

30.   Defendants' wrongful acts and omissions forced Plaintiffs to retain the professional services of the attorneys and law firm representing them with respect to these causes of action.

## CAUSES OF ACTION AGAINST DEFENDANT METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS

### BREACH OF CONTRACT

31.   All allegations above are incorporated herein.

32.   Metropolitan is liable to Plaintiffs for intentional violations of the Texas Insurance Code, and intentional breach of the common-law duty of good faith and fair dealing.  It follows,

6

then, that the breach of the statutory duties constitutes the foundation of an intentional breach of the insurance contract between Metropolitan and Plaintiffs.

33. Metropolitan's failure and/or refusal to pay adequate coverage as obligated under the terms of the Policy, and under the laws of the State of Texas, constitutes a breach of the insurance contract with Plaintiffs.

## NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

34. All allegations above are incorporated herein.

35. Metropolitan's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a).  All violations under this article are actionable by TEX. INS. CODE §541.151.

36. Metropolitan's unfair settlement practice of misrepresenting to Plaintiffs material facts relating to coverage constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(1).

37. Metropolitan's unfair settlement practice of failing to attempt in good faith to make a prompt, fair, and equitable settlement of the claim, even though liability under the Policy was reasonably clear, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(2)(A).

38. Metropolitan's unfair settlement practice of failing to provide Plaintiffs a prompt and reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for partial denial of the claim, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(3).

7

39.    Metropolitan's unfair settlement practice of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiffs constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(4).

40.    Metropolitan's unfair settlement practice of refusing to pay Plaintiffs' claim without conducting a reasonable investigation constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(7).

## NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE: THE PROMPT PAYMENT OF CLAIMS

41.    All allegations above are incorporated herein.

42.    Metropolitan's conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims.  All violations made under this article are actionable by TEX. INS. CODE §542.060.

43.    Metropolitan's failure to notify Plaintiffs in writing of its acceptance or rejection of the full claim within the applicable time constraints constitutes a non-prompt payment in violation of TEX. INS. CODE §542.056.

44.    Metropolitan's delay in paying Plaintiffs' claim following receipt of all items, statements, and forms reasonably requested and required, for longer than the amount of time provided, constitutes a non-prompt payment of the claim.  TEX. INS. CODE §542.058.

## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

45.    All allegations above are incorporated herein.

46.    Metropolitan's conduct constitutes a breach of the common-law duty of good faith and fair dealing owed to an insured in insurance contracts.

47.   Metropolitan's failure to adequately and reasonably investigate and evaluate Plaintiffs' claim, although, at that time, Metropolitan knew or should have known by the exercise of reasonable diligence that liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

## DTPA VIOLATIONS

48.   All allegations above are incorporated herein.

49.   Metropolitan's conduct constitutes multiple violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE 17.41–63.  Plaintiffs are consumers of goods and services provided by Metropolitan pursuant to the DTPA.  Plaintiffs have met all conditions precedent to bringing this cause of action against Metropolitan.  Specifically, Metropolitan's violations of the DTPA include, without limitation, the following matters:

   a.  By its acts, omissions, failures, and conduct, Metropolitan has violated sections 17.46(b)(2), (5), (7), (9), (12), (20) and (24) of the DTPA.   Metropolitan's violations include without limitation, (1) unreasonable delays in the investigation, adjustment, and resolution of Plaintiffs' claim, (2) failure to give Plaintiffs the benefit of the doubt, and (3) failure to pay for the proper repair of Plaintiffs' property when liability has become reasonably clear, which gives Plaintiffs the right to recover under section 17.46(b)(2).

   b.  Metropolitan represented to Plaintiffs that the Policy and Metropolitan's adjusting and investigative services had characteristics or benefits that they did not possess, which gives Plaintiffs the right to recover under section 17.46(b)(5) of the DTPA.

c.  Metropolitan also represented to Plaintiffs that the Policy and Metropolitan's adjusting services were of a particular standard, quality, or grade when they were of another, in violation of section 17.46(b)(7) of the DTPA.

d.  Furthermore, Metropolitan advertised the Policy and adjusting services with the intent not to sell them as advertised, in violation of section 17.46(b)(9) of the DTPA.

e.  Metropolitan breached an express warranty that the damages caused by wind and hail would be covered under the Policy.  This breach entitles Plaintiffs to recover under sections 17.46(b)(12) and (20) and 17.50(a)(2) of the DTPA.

f.  Metropolitan's actions are unconscionable in that Metropolitan took advantage of Plaintiffs' lack of knowledge, ability, and experience to a grossly unfair degree. Metropolitan's unconscionable conduct gives Plaintiffs a right to relief under section 17.50(a)(3) of the DTPA; and

g.  Metropolitan's conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

50.  Each of the above-described acts, omissions, and failures of Metropolitan is a producing cause of Plaintiffs' damages.  All of the above-described acts, omissions, and failures were committed "knowingly" and "intentionally," as defined by the Texas Deceptive Trade Practices Act.

## FRAUD

51.  All allegations above are incorporated herein.

52.  Metropolitan is liable to Plaintiffs for common-law fraud.

10

53.     Each and every misrepresentation described above concerned material facts that absent such representations, Plaintiffs would not have acted as Plaintiffs did, and Metropolitan knew its representations were false or made recklessly without any knowledge of their truth as a positive assertion.

54.     Metropolitan made the statements intending that Plaintiffs act upon them.  Plaintiffs then acted in reliance upon the statements, thereby causing Plaintiffs to suffer injury constituting common-law fraud.

## CAUSES OF ACTION AGAINST DEFENDANT RODNEY THOMAS

### NONCOMPLIANCE WITH THE TEXAS INSURANCE CODE:
### UNFAIR SETTLEMENT PRACTICES

55.     All allegations above are incorporated herein.

56.     Thomas's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Claim Settlement Practices Act.  TEX. INS. CODE §541.060(a).

57.     Thomas is individually liable for his unfair and deceptive acts, irrespective of the fact that he was acting on behalf of Metropolitan, because Thomas is a "person," as defined by TEX. INS. CODE §541.002(2).

58.     Thomas knowingly underestimated the amount of damage to the Property.  As such, Thomas failed to adopt and implement reasonable standards for the investigation of the claim arising under the Policy.  TEX. INS. CODE §542.003(3).

59.     Furthermore, Thomas did not attempt in good faith to affect a fair, prompt, and equitable settlement of the claim.  TEX. INS. CODE §542.003(4).

60.     Thomas's unfair settlement practice of failing to provide Plaintiffs a prompt and reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for partial

11

denial of the claim, also constitutes an unfair method of competition and an unfair and deceptive act or practice.  TEX. INS. CODE §541.060(a)(3).

61.    Thomas's unfair settlement practice of failing to attempt in good faith to make a prompt, fair, and equitable settlement of the claim, even though liability under the Policy was reasonably clear, constitutes an unfair method of competition and a deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(a)(2)(A).

## DTPA VIOLATIONS

62.    All allegations above are incorporated herein.

63.    Thomas's conduct constitutes multiple violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE 17.41–63.  Plaintiffs are consumers of goods and services provided by Thomas pursuant to the DTPA.  Plaintiffs have met all conditions precedent to bringing this cause of action against Thomas.  Specifically, Thomas's violations of the DTPA include the following matters:

   a.   By this Defendant's acts, omissions, failures, and conduct, Thomas has violated sections 17.46(b)(2), (5), and (7) of the DTPA.  Thomas's violations include, (1) failure to give Plaintiffs the benefit of the doubt, and (2) failure to write up an estimate reflecting the proper repair of Plaintiffs' Property when liability have become reasonably clear, which gives Plaintiffs the right to recover under section 17.46(b)(2).

   b.   Thomas represented to Plaintiffs that the Policy and his adjusting and investigative services had characteristics or benefits they did not possess, which gives Plaintiffs the right to recover under section 17.46(b)(5) of the DTPA.

12

c.  Thomas represented to Plaintiffs that the Policy and his adjusting services were of a particular standard, quality, or grade when they were of another, in violation of section 17.46(b)(7) of the DTPA.

d.  Thomas's actions are unconscionable in that Thomas took advantage of Plaintiffs' lack of knowledge, ability, and experience to a grossly unfair degree.  Thomas's unconscionable conduct gives Plaintiffs a right to relief under section 17.50(a)(3) of the DTPA; and

e.  Thomas's conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

64.  Each of Thomas's above-described acts, omissions, and failures is a producing cause of Plaintiffs' damages.  All acts, omissions, and failures were committed "knowingly" and "intentionally" by Thomas, as defined by the Texas Deceptive Trade Practices Act.  TEX. BUS. & COM. CODE 17.45.

**FRAUD**

65.  All allegations above are incorporated herein.

66.  Metropolitan assigned or hired Thomas to adjust the claim.

a.  Thomas had a vested interest in undervaluing the claims assigned to him by Metropolitan in order to maintain his employment. The disparity in the number of damaged items in his report compared to that of Plaintiffs' Third-Party Adjuster's is evidence of fraud on the part of Thomas. The valuation of damages that were included in Thomas's report compared to Plaintiffs' Third-Party Adjuster's is also evidence of fraud on the part of Thomas.

13

b. Furthermore, Thomas was aware of Plaintiffs' deductible before even visiting the Property to conduct the inspection. Thomas had advanced knowledge of what amount of damages he needed to find in order to either deny the claim or find the claim below the deductible.

c. Thomas made misrepresentations as to the amount of damage Plaintiffs' Property sustained as well as misrepresentations regarding how much it would cost to repair the damage to Plaintiffs' property.

d. Thomas made further misrepresentations to Plaintiffs during his inspection. Thomas used his expertise to fabricate plausible explanations for why visible damage to Plaintiffs' Property would not be covered under the policy. Such misrepresentations include damage to the Property owing from wear and tear, damage from a previous claim, and damage of a type not consistent with the type of claim that was made.

**NEGLIGENCE**

67. All allegations above are incorporated herein.

68. Thomas was negligent in his actions with regard to his adjusting of Plaintiffs' claim and violated the standard of care for an insurance adjuster licensed in the state of Texas. Those failures include one or more of the following acts or omissions:

a. Failure to conduct a reasonable inspection;

b. Failure to include covered damage that would be discovered as a result of reasonable inspection;

c. Failure to identify the proper cause and scope of the damage to Plaintiffs' Property;

d. Failure to identify the cost of proper repairs to Plaintiffs' Property; and

14

      e.   Failure to communicate to Plaintiffs the reasons for specific determinations made regarding the inclusion or exclusion of damage to Plaintiffs' Property.

69.   Thomas's acts and/or omissions constitute negligence. His conduct was therefore a proximate cause of the damages sustained by Plaintiffs.

70.   At all relevant times, Thomas was an agent or employee of Defendant Metropolitan.

71.   Thomas's unreasonable inspection was performed within the course and scope of his duties with Defendant Metropolitan. Therefore, Metropolitan is also liable for the negligence of Thomas through the doctrine of respondeat superior.

## GROSS NEGLIGENCE

72.   All allegations above are incorporated herein.

73.   Thomas's actions or omissions constitute gross negligence as defined in TEX. CIV. P. & REM. CODE § 41.001 (11)(A) and (B):

      a.   Thomas's actions, when viewed objectively from the standpoint of the actor at the time of their occurrence involves an extreme degree of risk, considering the probability and magnitude of potential harm to Plaintiffs; and

      b.   Thomas had actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, and/or welfare of Plaintiffs.

74.   Thomas intentionally misrepresented the scope and amount of damages on the estimate prepared for Plaintiffs' Property on behalf of Metropolitan. His estimate was to such an extreme degree below what another licensed adjuster would have done in this situation (as evidenced by the Third-Party Adjuster's estimate); it was also in complete disregard for

the risk and harm Plaintiffs would suffer if the actual damages to the Property were allowed to persist unrepaired.

## KNOWLEDGE

75.    Defendants made each of the acts described above, together and singularly, "knowingly," as defined in the Texas Insurance Code, and each was a producing cause of Plaintiffs' damages described herein.

## WAIVER AND ESTOPPEL

76.    Defendants waived and are estopped from asserting any coverage defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights letter to Plaintiffs.

## DAMAGES

77.    Since the claim was made, Metropolitan has not properly compensated Plaintiffs for all necessary repairs made, which are covered under the Policy.  This has caused undue hardship and burden to Plaintiffs.  These damages are a direct result of Defendants' mishandling of Plaintiffs' claim in violation of the laws set forth above.

78.    Defendants made the above and other false representations to Plaintiffs, either knowingly or recklessly, as a positive assertion, without knowledge of the truth.  Defendants made these false misrepresentations with the intent that Plaintiffs act in accordance with the misrepresentations.  Plaintiffs then relied on these misrepresentations, including but not limited to those regarding coverage and the cause and scope of damage.  Plaintiffs suffered damages as a result.

79.    Plaintiffs would show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of damages sustained.  The acts, omissions, failures, and

16

conduct of Defendants have caused Plaintiffs' damages, which include, without limitation, costs for all necessary repairs required to be made to Plaintiffs' Property, and any investigative and engineering fees incurred.

80.   For breach of contract, Plaintiffs are entitled to regain the benefit of Plaintiffs' bargain, which is the amount of Plaintiffs' claim, consequential damages, together with attorney's fees.

81.   The damage to Plaintiffs' Property is currently estimated at $26,247.44.

82.   For noncompliance with the DTPA and Texas Insurance Code, Unfair Settlement Practices, Plaintiffs are entitled to actual damages, which include the loss of the benefits owed pursuant to the Policy, court costs, and attorney's fees.   For knowing and intentional conduct of the acts described above, Plaintiffs asks for three (3) times Plaintiffs' actual damages.  TEX. INS. CODE §541.152 and TEX. BUS. & COM. CODE 17.50(B)(1).

83.   For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiffs are entitled to the amount of Plaintiffs' claim, plus an eighteen percent (18%) per annum penalty on that claim, as damages, as well as pre-judgment interest and reasonable attorney's fees.  TEX. INS. CODE §542.060.

84.   For breach of the common-law duty of good faith and fair dealing, Plaintiffs are entitled to compensatory damages, including all forms of loss resulting from Defendants' breach of duty, such as additional costs, economic hardship, losses due to nonpayment of money Metropolitan owed, and exemplary damages.

85.   Defendants' breach of the common-law duty of good faith and fair dealing was committed intentionally, with a conscious indifference to Plaintiffs' rights and welfare, and with "malice," as that term is defined in Chapter 41 of the Texas Civil Practices and Remedies

17

Code.  These violations are the type of conduct which the State of Texas protects its citizens against by the imposition of exemplary damages.  Therefore, Plaintiffs seek the recovery of exemplary damages in an amount determined by the finder of fact sufficient to punish Defendants for their wrongful conduct and to set an example to deter Defendants and others from committing similar acts in the future.

86.   For fraud, Plaintiffs are entitled to recover actual and exemplary damages for knowingly fraudulent and malicious representations, along with attorney's fees, interest, and court costs.

87.   For the prosecution and collection of this claim, Plaintiffs have been compelled to engage the services of the attorneys subscribed to this pleading.  Therefore, under Chapter 38 of the Texas Civil Practices and Remedies Code, sections 541 and 542 of the Texas Insurance Code, and section 17.50 of the DTPA, Plaintiffs are entitled to recover a sum for the reasonable and necessary services of Plaintiffs' attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

88.   As required by Rule 47(b) of the Texas Rules of Civil Procedure, Plaintiffs' counsel states that the damages sought are in an amount within the jurisdictional limits of this Court.  As required by Rule 47(c)(3) of the Texas Rules of Civil Procedure, Plaintiffs' counsel states that Plaintiffs seek only monetary relief of no less than $75,000, but no more than $100,000.00, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees. A jury will ultimately determine the monetary relief actually awarded, however.  Plaintiffs also seek pre-judgment and post-judgment interest at the highest legal rate.

## REQUESTS FOR DISCLOSURE

89.   Under Texas Rules of Civil Procedure 190 and 194, Plaintiffs request that Defendants disclose, within fifty (50) days from the date this request is served, the information or material described in Rules 190.2(b)(6) and 194.2.

## JURY DEMAND

90.   Plaintiffs hereby request a jury trial for all causes of action alleged herein, tried before a jury consisting of citizens residing in Montgomery County, Texas.  Plaintiffs hereby tender the appropriate jury fee.

## PRAYER

Plaintiffs pray that Defendants, Metropolitan Lloyds Insurance Company of Texas and Rodney Thomas, be cited and served to appear, and that upon trial hereof, Plaintiffs,  Brian and Cheryl Tomlinson, have and recovers from Defendants, Metropolitan Lloyds Insurance Company of Texas and Rodney Thomas, such sums as would reasonably and justly compensate Plaintiffs in accordance with the rules of law and procedure, as to actual, consequential, and treble damages under the Texas Insurance Code and Texas Deceptive Trade Practices Act, and all punitive, additional, and exemplary damages, as may be found.  In addition, Plaintiffs request the award of attorney's fees for the trial and any appeal of this case, for all costs of Court expended on Plaintiffs' behalf, for pre-judgment and post-judgment interest as allowed by law; and for any other and further relief, at law or in equity, to which Plaintiffs, Brian and Cheryl Tomlinson, may show Plaintiffs are justly entitled.

Respectfully submitted,

CHAD T WILSON LAW FIRM PLLC

By: /s/ *Chad T. Wilson*

19

Chad T. Wilson
Bar No. 24079587
Amanda J. Fulton
Bar No. 24077283
455 East Medical Center Blvd., Suite 555
Webster, Texas 77598
Telephone: (832) 415-1432
Facsimile: (281) 940-2137
eservice@cwilsonlaw.com
cwilson@cwilsonlaw.com
afulton@cwilsonlaw.com

ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that a true and correct copy of the above foregoing instrument has been forwarded via e-filing in accordance with the Texas Rules of Civil Procedure on this 18th day of March, 2020.

STACY CONDER ALLEN
901 MAIN STREET, SUITE 6200
DALLAS, TEXAS 75202
TELEPHONE: (214) 748-5000
FACSIMILE: (214) 748-1421

Received and E-Filed for Record
5/13/2020 3:50 PM
Melisa Miller, District Clerk
Montgomery County, Texas
Deputy Clerk, Megan Shiflett

## CAUSE NO. 20-03-03871

| | | |
|---|---|---|
| BRIAN and CHERYL TOMLINSON, | § | IN THE COUNTY COURT |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | AT LAW NO. 2 |
| | § | |
| METROPOLITAN LLOYDS | § | |
| INSURANCE COMPANY OF TEXAS | § | |
| and RODNEY A. THOMAS, | § | |
| | § | |
| Defendants. | § | MONTGOMERY COUNTY, TEXAS |

## DEFENDANT METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS' ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Metropolitan Lloyds Insurance Company of Texas, ("Defendant"), and files this Original Answer, and in support thereof would respectfully show this Honorable Court the following:

### I. GENERAL DENIAL

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendant generally denies each and every, all and singular, the allegations contained within Plaintiffs' Original Petition, and demands strict proof thereon by a preponderance of the credible evidence in accordance with the Constitution and laws of the State of Texas.

### II. AFFIRMATIVE DEFENSES

Pleading in the affirmative, pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant alleges the following affirmative defenses:

Defendant asserts that any claims for punitive/exemplary damages are governed and limited by Chapter 41 of the Texas Civil Practice & Remedies Code, including but not limited to, §§ 41.003, 41.004, 41.006, 41.007 and 41.008.

**DEFENDANT METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS' ORIGINAL ANSWER - PAGE 1**

Defendant further asserts that punitive/exemplary damages cannot be sustained because an award of punitive/exemplary damages under Texas law, subject to no predetermined limit such as a maximum multiple of compensatory damages or a maximum amount on the amount of punitive/exemplary damages that may be imposed, would violate Defendant's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, would violate Defendant's rights not to be subjected to an excessive fine in violation of the Eighth Amendment to the United States Constitution, and would be improper under the common law and public policies of the State of Texas, §§ 3 and 19 of the Texas Constitution. In addition, Defendant asserts that any claims of the Plaintiffs for punitive/exemplary damages against Defendant should be proved beyond a reasonable doubt under the Sixth Amendment to the United States Constitution, as opposed to a mere preponderance of the evidence.

Defendant asserts that punitive/exemplary damages are barred by the due process and excessive fines provisions contained within the United States Constitution and Article I, §§ 3 and 19 of the Texas Constitution.

Defendant also asserts that claims for punitive/exemplary damages against Defendant cannot be sustained because an award of punitive/exemplary damages in this case, combined with any prior, contemporaneous, or subsequent judgment against Defendant for punitive/exemplary damages arising out of Defendant's acts or omissions, would constitute impermissible multiple punishments for the same wrong in violation of Defendant's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and would constitute double jeopardy in violation of the common law and statutory law of the State of Texas, and Article I, §§ 3 and 19 of the Texas Constitution.

Pleading further, Defendant specifically pleads that Plaintiffs are not entitled to recovery

of exemplary damages absent a showing of fraud or malice or a willful act or omission of gross

neglect on the part of Defendant, pursuant to Tex. Civ. Prac. & Rem. Code Ch. 41.

Defendant further alleges all of the terms and provisions of the policy of insurance issued

to the Plaintiffs by Metropolitan Lloyds Insurance Company of Texas, including but not limited

to the following policy provisions:

### COVERAGE A - DWELLING
1. **Dwelling Owners**. If **your** dwelling is a one, two, three or four family dwelling, **we** cover:
   A. the dwelling owned by **you** on the **residence premises**; and
   B. structures, equipment and accessories attached to the dwelling. Swimming pools not fully enclosed within the dwelling are covered under **COVERAGE B - PRIVATE STRUCTURES**.

\* \* \*

### COVERAGE B – PRIVATE STRUCTURES
At the location of the **residence premises:**
1. **we** cover private structures owned by **you** and separated from the dwelling by clear space; or

\* \* \*

Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be private structures

**We** do not cover private structures:
1. used or held for any **business** or commercial farming purposes; or
2. rented or held for rental to a person not a tenant of the dwelling, unless solely used as a private garage.

This coverage does not apply to land, including land on which the private structures are located, or any costs required to replace, rebuild, stabilize or otherwise restore the land.

\* \* \*

### CAUSES OF PROPERTY LOSS

### SECTION I - LOSSES WE COVER
### (SPECIAL PERILS)

### LOSS DEDUCTIBLE CLAUSE

**We** will pay only when a loss exceeds the deductible amount shown in the Declarations. **We** will pay only that part of the loss over such stated deductible.

**We** will pay only when a loss caused by **hurricane windstorm** exceeds the deductible amount shown in the Declarations as Hurricane Windstorm Loss deductible.  **We** will pay only that part of the loss over such deductible.  The deductible will apply to all Section I losses resulting from **hurricane windstorm** (including Loss of Use.)

The person(s) named in the Declarations may change this deductible only at the policy anniversary date.

**Hurricane Windstorm "% Deductible"**
If the deductible is shown as a percentage (%), the dollar amount of the deductible is determined by multiplying the deductible percentage (%) shown by the amount of insurance for Coverage A (Coverage C for Renters and Condominium Owners).

However, if a covered loss caused by fire, smoke, or explosion resulting from **hurricane windstorm** occurs, the policy loss deductible applies.

***

**COVERAGE A – DWELLING AND COVERAGE B – PRIVATE STRUCTURES**

***

**COVERAGE C – PERSONAL PROPERTY**
**We** will pay for sudden and accidental direct physical loss or damage to the property described in Coverage C, when loss or damage is caused by **SECTION 1 – BROAD NAMED PERILS,** except as excluded in **SECTION 1 – LOSSES WE DO NOT COVER.**

**SECTION I - BROAD NAMED PERILS**

Whenever Broad Named Perils is referred to in this policy, the following causes of loss will apply for sudden and accidental direct physical loss.

Under the named perils listed below, **we** do not cover loss or damage to the property which results directly or indirectly from **fungus and mold**.

However, **we** do cover ensuing **fungus and mold** caused by or resulting from sudden and accidental:
a.      discharge,
b.      leakage, or
c.      overflow
of water or steam if the sudden and accidental discharge, leakage or overflow of water or steam loss would otherwise be covered under this policy.

**We** do not cover any remediation treatment or remediation testing, whether or not associated with the repair or replacement of covered property.

Remediation treatment means the reasonable and necessary treatment, removal or disposal of **fungus and mold**.

Remediation testing includes any testing or investigation of either property or air to:
a.      detect,
b.      measure,
c.      evaluate, or
d.      confirm
the absence, presence or level of **fungus and mold** whether performed prior to, during or after remediation treatment.

* * *

2.      **Windstorm or Hail**
        **We** do not pay for loss to the interior of a building or to personal property inside, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the opening.

* * *

## SECTION I - LOSSES WE DO NOT COVER

1.      **We** do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

* * *

D.      **Water damage**, meaning any loss caused by, resulting from, contributed to or aggravated by:

        1.      flood, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind;
        2.      water or water-borne material which backs up through sewers or drains, or which overflows or is discharged from a sump pump, sump pump well or other system designed to remove subsurface water which is drained from the foundation area; or
        3.      water or water-borne material below the surface of the ground, including water which exerts pressure on, or flows, seeps or leaks through any part of a building, sidewalk, foundation, driveway,

swimming pool or other structure of water which causes earth movement

This exclusion applies whether or not the water damage is caused by or results from human or animal forces or any act of nature.

However, **we** pay for direct loss that ensues after water damage if caused by fire, theft or explosion and then **we** pay for only the ensuing loss.

Water damage to property described in Coverage C away from a premises or location owned, rented, occupied or controlled by **you** is excluded even if weather conditions contribute in any way to produce the loss.

E.    **Earth Movement**, meaning any loss caused by, resulting from, contributed to or aggravated by events that include, but are not limited to:

1.    earthquake and earthquake aftershocks;
2.    volcanic eruption and volcanic effusion;
3.    sinkhole;
4.    subsidence;
5.    mudslide including landslide, mudflow, debris flow, avalanche or sediment;
6.    erosion or excavation collapse;
7.    except as specifically provided by this endorsement, the sinking, rising, shifting, expanding, bulging, cracking, settling or contracting of the earth, soil or land; and
8.    volcanic explosion and lava flow, except as granted under **SECTION I – ADDITIONAL COVERAGES** for **Volcanic Action.**

This exclusion applies whether or not the earth movement is combined with water or caused by or results from human or animal forces or any act of nature.

However, **we** pay for direct loss that ensues after earth movement if caused by fire, explosion other than explosion of a volcano, theft, or breakage of glass or safety glazing material and then **we** pay for only the ensuing loss.

*  *  *

H.    **Neglect** by **you** to use all reasonable means to save and preserve property at and after the time of a loss.

*  *  *

2.    **We** do not insure under any coverage for any loss consisting of one or more of the

items below. However, **we** pay for any ensuing loss unless the ensuing loss is itself excluded by any other provision in this policy. Further, **we** do not insure for loss described in Exclusion 1. above and Exclusions 3. below regardless of whether one or more of the items below (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss. The items are:

A.     conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent or without fault;

B.     defective, inadequate, faulty or unsound:
        1.     planning, zoning, development, surveying, siting;
        2.     design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
        3.     materials used in repair, construction, renovation or remodeling; or
        4.     maintenance;

of any property whether on or off the **residence premises**. Property includes land, structures or improvements of any kind; and

C.     weather conditions.

However, this exclusion only applies if weather conditions contribute in any way with an excluded event or cause of loss to produce the loss.

3.     **We** do not cover loss or damage to the property described in <u>Coverage A.</u> and <u>Coverage B</u> which results directly or indirectly from any of the following:

A.     wear and tear, marring, scratching, aging, deterioration, corrosion, rust, mechanical breakdown,  latent defect, inherent vice, or any quality in property that causes it to damage  or destroy itself;

B.     **fungus and mold**.
However, **we** do cover ensuing **fungus and mold** caused by or resulting from sudden and accidental:
a.     discharge,
b.     leakage, or
c.     overflow
of water or stream if the sudden and accidental discharge, leakage or overflow of water or steam loss would otherwise be covered under this policy.

**We** do not cover any remediation treatment or remediation testing, whether or not associated with the repair or replacement of covered property.

Remediation treatment means the reasonable and necessary treatment,

removal or disposal of **fungus and mold**.

Remediation testing includes any testing or investigation of either property or air to:
a.      detect,
b.      measure,
c.      evaluate, or
d.      confirm
the absence, presence or level of **fungus and mold** whether performed prior to, during or after remediation treatment.

C.      settling, cracking, shrinking, bulging, or expansion of bulkheads, pavements, patios, foundations, footings, supports, walls, floors, roofs, or ceilings;

\* \* \*

**We** pay for any direct loss that follows items A. through I. to property described in Coverages A and B not otherwise excluded or excepted in this policy and then **we** pay for only the ensuing loss.  If a covered water loss follows, **we** will pay the cost of tearing out and replacing any part of the building necessary to repair the plumbing or appliance, but **we** do not cover loss to the plumbing or appliance from which the water escaped.

\* \* \*

Pleading further, Defendant would also assert that Plaintiffs failed to comply with the terms and conditions of the insurance policy issued by Metropolitan Lloyds Insurance Company of Texas to the Plaintiffs. Specifically, the subject insurance policy provides as follows:

PROPERTY CONDITIONS

SECTION I – CONDITIONS

\* \* \*

2.      **What you Must do After a Loss. We** have no obligations to provide coverage under this policy if **you** or **your** representative fail to comply with the following duties and the failure to comply is prejudicial to **us**:

A.      Promptly notify **us** or **our** representative.
          In case of theft, promptly notify the police.
          In case of loss under the credit card or electronic fund transfer card coverage, promptly notify the issuing company or bank.

B.      Protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep a record of necessary expenditures.

C.      Cooperate with us in the investigation of a claim.

* * *

E.      At any reasonable time and place **we** designate, and as often as **we** reasonably require:
1.      show **us** the damaged property;
2.      submit to questions concerning the loss under oath while not in the presence of any other person defined as **"you"**, and sign and swear to the answers; and

* * *

F.      Within 90 days after **our** request, the named insured must file with **us** a signed and sworn proof of loss, stating to the best of **your** knowledge:
1.      the time and cause of loss;
2.      **your** interest and that of any other person in the property involved and all encumbrances on the property;
3.      a description of each item, including all information contained in the inventory described above;
4.      a description of other insurance policies that might apply to the loss;
5.      any changes in ownership, use, possession or location of the property that took place since this policy was issued;
6.      if loss is to a building, who occupied it at the time of loss, what the purposes of such occupancy were, and whether the building stood on leased ground;
7.      specifications of any damaged building, fixture or machinery and detailed estimates for repair of the damage;
8.      receipts for additional living expenses **you** incur and records supporting the fair rental value; and
9.      evidence or affidavit supporting a claim under **SECTION 1 – ADDITIONAL COVERAGES** for **Credit Card, Electronic Fund Transfer Card, Forger and Counterfeit Money,** stating the amount and cause of loss.

* * *

7.      **Appraisal.** If **you** and **we** fail to agree on the amount of loss, either **you** or **we** can make a written demand for an appraisal of the loss. Each party will select a competent appraiser and notify the other within 20 days of the appraiser's identity. The two appraisers will select a competent and impartial umpire. If the two appraisers are unable to select an umpire within 15 days, **you** or **we** can request that the choice of an umpire be made by a judge of a court of record in the

state where the **residence premises** is located.

The appraisers will separately set the amount of loss determining the full replacement cost and **actual cash value** for each item as needed. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. The written award by two of these three people for any item will set the amount of loss and is binding on **you** and **us** when filed with **us.**

**You** will pay the appraiser selected by **you**. **We** will pay the appraiser selected by **us**. **You** and **we** will split the other expenses of appraisal and the fee of the umpire.

With regard to Appraisal, the term **"you"** applies only to the named insured, including spouse if a resident of the same household.

\*\*\*

Pleading further, Plaintiffs failed to promptly repair the subject property and based upon information and belief, have not performed necessary repairs to the property.

Defendant asserts as an affirmative defense that it is incumbent on Plaintiffs to segregate their covered damages, if any, due to any windstorm or hail that allegedly occurred on or about February 1, 2018, from any other pre-existing and/or wind/hail related damages.

As an additional affirmative defense, Defendant asserts that Plaintiffs' damages at issue in this lawsuit, if any, are due to intervening, superseding causes wholly unrelated to Defendant and over which Defendant has and exercised no control.

Defendant affirmatively pleads that the damages sought by this lawsuit against it were, in whole or in part, caused by the neglect and/or intent and/or omissions of Plaintiffs and/or third person(s) over whom Defendant did not control, had no right of control, and/or no duty over which to exercise control. Plaintiffs' and/or these third person(s)' acts and/or omissions were the sole proximate cause, sole producing cause, proximate cause, or a cause of the injuries and damages alleged by Plaintiffs and cannot be attributed to Defendant.

For further affirmative defense, Defendant asserts comparative fault.

For further affirmative defense, Defendant asserts contributory negligence and proportionate responsibility as a bar to Plaintiffs' claims.

By way of additional affirmative defense, Defendant asserts that Plaintiffs' damages, if any, were caused by a new and independent cause or causes not reasonably foreseeable by Defendant. This new and independent cause(s) was the immediate and efficient cause of injury, if any, to Plaintiffs. The acts or omissions alleged by Plaintiffs against Defendant were remote and were not the proximate or producing cause of any of any of Plaintiffs' alleged damages.

Defendant affirmatively pleads the fortuity doctrine as a bar to recovery. Plaintiffs cannot recover against Defendant for any pre-existing damages and/or damages that were already losses-in-progress.

By way of additional affirmative defense, Defendant asserts that Plaintiffs are barred from recovery under the doctrine of concurrent causation.

As an additional defense, Defendant asserts the doctrine of excessive demand. In addition and without waiving the foregoing, Plaintiffs' right, if any, to an award of attorney's fees is governed by application of TEX. INS. CODE § 542A.007.

### III. JURY DEMAND

Defendant demands trial by jury.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the Plaintiffs take nothing against Defendant, and that Defendant go henceforth without day, with its costs, and for such other and further relief, both at law and in equity, specific and general, to which Defendant may show itself to be justly entitled.

Respectfully submitted,

STACY | CONDER | ALLEN LLP

By: _____

T. Glenn Ingram
State Bar No. 24007423

Dennis D. Conder
State Bar No. 04656400

901 Main Street, Suite 6200
Dallas, Texas 75202
(214) 748-5000
(214) 748-1421 FAX
ingram@stacyconder.com
conder@stacyconder.com

ATTORNEYS FOR DEFENDANT
METROPOLITAN LLOYDS INSURANCE
COMPANY OF TEXAS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 13th day of May, 2020, a copy of the foregoing was delivered to counsel for Plaintiffs pursuant to the Texas Rules of Civil Procedure.

_____
T. Glenn Ingram

PAN/PLDG/642081.1/001466.20250